The opinion of the Court was delivered by
ING-Lis, A. J.
The action is assumpsit, by the payee against the maker, on a promissory note, payable to bearer, the execution of which is admitted. The defence is, payment. Payment of a promissory note, or other negotiable instrument, can be made effectually only to the real proprietor, or to some one duly authorized by him to receive. In the present case, it is not pretended that the original payee, Cooper Cone, ever parted with his ownership of the note, or that he, in person, has received payment. The allegation is, that payment was made to, and accepted by, Eachel Cone, the sister, and, as it is said, the agent, quoad hoc, of the plaintiff) in whose possession the note was placed by the plaintiff) and who produced it upon the defendant’s call, and surrendered it upon receipt of payment. That the full sum of principal and interest due was, in fact, paid, in Confederate treasury notes, to Eachel Cone by the defendant, B. H. Brown, and that the note was thereupon delivered up to him, and is now in his possession, is 'not denied. We do not think it necessary to embarrass the case here by any question arising out of Laurence Cone’s interference in the matter, since all that he did seems to us to have been done in the presence and with the assent and concurrence of his sister Eachel, and, therefore, to have been, in law, her personal act. The real matter of dispute is as to the fact and scope of her agency for the plaintiff) *269 and her consequent authority to bind him by her receipt of this payment. One may constitute an agent, by a previous delegation of authority, to act for him, either generally, or in a special matter and manner, or, without any previous delegation, in fact, of authority to do the particular act, may, by his subsequent ratification and adoption thereof, preclude himself lrom denying the agency. The facts of the present case furnish fair grounds whereon to argue that it is within the operation of one or other of these principles. And hence the whole investigation on the Circuit resolved itself ultimately into these two inquiries: First. Had Rachel Cone been, by any previous delegation of authority, constituted the plaintiff’s agent to collect, or receive payment of, this note as she did? Second. If not so made his agent to receive, or not authorized to receive in this particular manner, has the plaiutiffj by his subsequent ratification and adoption of her act, precluded himself, as against the defendants, from repudiating it ?
' Each of these is a question of fact proper to be solved by the jury, and should be submitted to them for this purpose with just instructions touching the principles of law involved, as giving legal character and consequence to facts. The report made to this Court certifies us that the latter question, as to the plaintiff’s subsequent confirrna.tion of his sister’s act in receiving payment in Confederate notes, was submitted to the jury; and no error, either in what he said or what he omitted to say, is discovered in the instructions of the Circuit Judge on this point. It was not, in law, incumbent upon the plaintiff to seek out Brown, and carry back and tender to him the treasury notes. It was enough, if he duly gave him notice that he would not stand to and abide by his sister’s act, done for him and in his name.
Erom the report itself it would be inferred that the other *270 question was taken from the jury, and decided by the Court. The Judge says: “I held that the possession of Rachel Cone was a naked bailment — deposilum—and that she had no right or control over the papers left in her custody beyond their safe keeping. The authority conferred .by the plaintiff was to safely keep, and not to surrender the note to the makers on satisfaction of the amount due.”
If we should confine ourselves, as is usual here, to the report, we would feel constrained to send the case back to the. Circuit on this ground. But the grounds of appeal, and the arguments, so far from raising any such objection as this, on the contrary, concede that this question also was, in truth, left to the jury, and the passage which has just been cited must be understood as a report of what the Judge, while instructing the jury upon the law of the case, stated as his own opinion of the effect of the evidence. The terms in which this opinion is expressed are certainly very absolute; for the very matter to be ascertained by the jury was, whether the possession of Rachel Cone was a mere bailment or deposit, or whether her agency did not extend beyond the safe keeping to the collection or receipt of payment.
It is gathered from the grounds of appeal and the argument on both sides, to which the incompleteness of the report compels a resort, that the Judge, in his instructions, compared the case of a delivery, by the owner of a promissory note, negotiable by delivery merely, to an agent, to that of a similar delivery of an ordinary chattel, and held that the agent’s possession imported no more in the one case than in the other, and that he illustrated his views as to the legal significance of such possession by a reference to the recent case of Carmichael vs. Buck, (12 Rich. 451.) That was the case of a raft of lumber entrusted by the owner to the possession of an agent to be carried down the *271 river, and there delivered to the owner’s factors for sale, but wrongfully sold by the agent represénting himself as the owner.
And it was held that the purchaser could not retain it, upon proof made of the true ownership. But surely this is not the law of negotiable securities when in such condition as to pass by mere delivery. One having possession, however acquired, of a promissory note, bill of exchange, check, &c., negotiable by mere delivery, is presumed to be the owner, or right holder, and any stranger, having no notice to the contrary, may safely act upon this presumption, and taking it thus in good faith and for value will acquire a title good in law. It is of utmost importance to the interests of commerce which these negotiable securities so largely serve that this shall be so. (Story Prom. Notes, § 381; Penny vs. Caldwell, Col. Dec., 1829, 2 Rice’s Dig. 233.) And where one, dealing with the person having-possession of a chattel, knows that he is not the owner, but is holding confessedly for another, the principle applicable was declared in Carmichael vs. Buck to be, “ that where one, for a special purpose, commits his property to a limited agent, in the usual way of doing such things, lie is not to be accused of holding out the agent as more than he is.” From which it would follow that the party so dealing has taken upon himself the burden of proving the scope of the agency so as to bring'himself within it. The maxim applicable is, “ Qui contrahit cum alio, clebet esse gnarus concliliones ejus, cum quo contrahit''' Of course reference is now had to the mere fact of possession, not modified by any negligence or omission of duty or other fault of the' principal. (Story on Prom. Notes, § 376.) But when the person having possession of a mercantile security negotiable by mere delivery, is known to be holding not for himself, but for another who is the true owner, his possession is yet prima facie evidence of an agency from *272 the owner to collect the amount due, to receive payment, and surrender the note. The maker paying in good faith to such person, will be protected in so doing by the presumption created by this prima facies, until it is overcome by sufficient contrary evidence. Mr. Justice Story in his treatise on Agency, discoursing of the “incidents implied by law from the direct and principal authority,” (section 97,) and therein of “incidental authority as a mere inference of fact from the peculiar circumstances of the case,” says: ‘‘And, generally, the possession of a negotiable instrument is deemed sufficient prima facie evidence of the title of the possessor to receive payment of it.” (Story, Agency, § 104.), .And again, in his work on Promissory Ai tes: “ In general it may also be stated that if the note is endorsed in blank, and is in possession of a party, he will be deemed prima facie entitled to demand payment thereof, whether he be the actual owner, or only an agent for the owner.” (Story, Prom. Notes, § 246.) Mr. Chitty, in his work on Bills, &c., says: “In ordinary cases, the mere production of a bill of exchange or note endorsed in blank by the proper person, or the mere production of a check is sufficient to warrant payment to the person who produces it, for the possession of an instrument, so endorsed, affords presumptive evidence of the holder’s ownership or agency to receive payment, and this without reference to his being the habitual agent of the same party.” (Chitty, Bills, 394.) And so, also, Mr. Greenleaf: “The authority to receive payment is inferred from the possession of a negotiable security.” (2 Greenl. Evid. 165.) So far has this doctrine been carried, that such possession for the true owner has been held sufficient prima facie evidence of an agency to receive payment for the owner, to affect him criminally with the fact of such receipt in “ an action to recover penalties on the statute of usury.” (Owens vs. Barrow, 1 Bos. & Pull. N. R. 101.) The general proposi *273 'tion is all that is affirmed here. Of course, as the presumption may be rebutted by contrary evidence, it will be stronger or weaker, according to the attending circumr stances, which may, themselves, either on the one hand constitute such opposing evidence, or, on the other, may corroborate the presumption. The possession of a member of the owner’s family in his own house would create a much weaker presumption and more easily overcome than the possession of a stranger, in a different place, and still less than the possession of an attorney, a collecting officer^ a broker, a banker, or other person acting in a business capacity. But even this presumption will be stronger where the owner is gone from home for a protracted absence, than where he is himself readily accessible. And there may be, and perhaps in the present case are, other circumstances operating one way or the other.
In the particular here indicated, the possession of a promissory note negotiable by delivery, is not strictly analogous to the possession of an ordinary chattel — it has more legal significance resulting from the nature of the property, the purpose for which possession is ordinarily parted with, and the power which appears on its face to belong to the possessor. On this point it is considered that there was error in the charge of the Judge, and as this Court is not able to discern how far the absolute terms of his instructions may have controlled the jury in their finding, a new trial must be granted, and it is so ordered.
DuNKiN, C. J., and Wardlaw, A. J., concurred.

Motion granted.